# EXHIBIT H

Electronically FILED by Superior Court of California, County of Los Angeles on 11/23/2022 09:31 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

Case 2:23-cv-01461-DSF-AFM   Document 1-3   Filed 02/27/23   Page 2 of 15   Page ID #:47

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Yolanda Orozco

1  JONATHAN A. STIEGLITZ
   (SBN 278028)
2  jonathan.a.stieglitz@gmail.com
   THE LAW OFFICES OF
3  JONATHAN A. STIEGLITZ
   11845 W. Olympic Blvd., Ste. 800
4  Los Angeles, California 90064
   Telephone:    (323) 979-2063
5  Facsimile:    (323) 488-6748

6  Attorney for Plaintiff
   Healthcare Ally Management of California, LLC
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF LOS ANGELES

10

11  HEALTHCARE ALLY MANAGEMENT          Case No.:   22STCV36996
    OF CALIFORNIA, LLC
12                                       Complaint For:
                  Plaintiff,
13                                       1.   PROMISSORY ESTOPPEL.
          v.                             2.   VIOLATION OF CAL. BUS. & PROF.
14                                            CODE §17200 ET SEQ. ("UCL").
    O'Melveny & Myers, LLP and DOES 1-   3.   NEGLIGENT MISREPRESENTATION;
15  10,                                       and
                                         4.   BREACH OF WRTITEN CONTRACT
16                Defendant.
                                         (Jury Trial Requested)
17
                                         Damages - $230,009.00
18

19

20

21

22

23

24

25

26

27

28

                              Complaint

1         Plaintiff HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC. (Hereinafter

2 referred to as "PLAINTIFF", and "HAMOC") complains and alleges:

3                                     **PARTIES**

4       1.      On June 17, 2015, La Peer Surgery Center (hereinafter referred to as the "Medical

5 Provider") entered into an agreement with HAMOC. The agreement provided that Medical

6 Provider could assign any past, present, or future unpaid or underpaid bills to HAMOC by

7 sending HAMOC a copy of the unpaid or underpaid bill. The agreement also provided that once

8 an underpaid or unpaid bill was assigned to HAMOC, HAMOC had the right to take any legal

9 action necessary including the filing of a lawsuit to attempt to recover an unpaid or underpaid bill.

10 On October 13, 2022, Medical Provider assigned Patient's[1] underpaid/unpaid bill including the

11 right to file a lawsuit to HAMOC by sending via email a copy Patient's underpaid/unpaid bill to

12 HAMOC. Patient is a member and enrollee of O'Melveny & Myers, LLP (hereinafter referred to

13 as "DEFENDANT") health insurance policy.

14       2.      DEFENDANT is and was licensed to do business in and is and was doing business

15 in the State of California, as a payor of insurance. HAMOC is informed and believes that

16 DEFENDANT and or its agents are licensed to transact the business of insurance in the State of

17 California.  DEFENDANT and or its agents are in fact transacting the business of insurance in the

18 State of California and is thereby subject to the laws and regulations of the State of California.

19       3.      The true names and capacities, whether individual, corporate, associate, or

20 otherwise, of defendants DOES 1 through 10, inclusive, are unknown to HAMOC, who therefore

21 sues said defendants by such fictitious names.  HAMOC is informed and believes and thereon

22 alleges that each of the defendants designated herein as a DOE is legally responsible in some

23 manner for the events and happenings referred to herein and legally caused injury and damages

24 proximately thereby to HAMOC.  HAMOC will seek leave of this Court to amend this Complaint

25

26 _____

27 [1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full names, dates of treatment and policy information pertaining to the Patients is being withheld.  This information will be disclosed to defendants upon their request.

28

to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

4.      At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent.  At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its Patient.

### **GENERAL ALLEGATIONS**

5.      All of the claims asserted in this complaint are based upon the individual and proper rights of Medical Provider in its own individual capacity and are not derivative of the contractual or other rights of the Medical Provider's Patients.  The claims asserted in this complaint arise out of the Medical Provider's interactions with DEFENDANT and DOES 1 through 10, inclusive and are derived from the representations and warranties made during those conversations amongst those parties. Medical Provider does not in any way, seek to enforce the contractual rights of the Medical Provider's Patients, through the Patients' insurance contract, policies, certificates of coverage or other written insurance agreements.

6.      This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to Medical Provider for surgical care, treatment and procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

7.      Medical Provider is informed and believes based on DEFENDANT's oral and other representations that the Patient was an insured of DEFENDANT either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them. Medical Provider is informed and believes that the Patient entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have access to medically necessary treatments, care, procedures, and surgeries by medical practitioners like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

8.      Medical Provider is informed and believes that DEFENDANT and DOES 1 through 10, inclusive, and each of them, received and continue to receive, valuable premium payments from the Patients and/or other consideration from patients under the subject policies applicable to patients.

9.      It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

10.     Those benefits include an increased volume of business because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network" and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

11.     Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

12.     The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered,

- 4 -
COMPLAINT

1   because it is not providing the medical provider within network medical provider benefits, such as

2   increased patient volume and direct payment obligations.

3         13.    The reason why medical providers have chosen to forgo the benefits of a contract

4   with a payor is that, in recent years, many insurers including DEFENDANT's contracted rates for

5   in-network providers have been so meager, one-sided, and onerous, that many providers like

6   Medical Provider have determined that they cannot afford to enter into such contracts.  As a

7   result, a growing number of medical providers have become non-contracted or out of network

8   providers.

9         14.    Plaintiff believes that for non-contracted, out-of-plan, or out-of-network providers,

10  DEFENDANT has unlawfully underpaid these providers for the medically necessary and

11  appropriate services they have rendered to the insured of the DEFENDANT.  Plaintiff believes

12  that in some cases DEFENDANT has used flawed databases and systems to unilaterally

13  determine what amounts it pays to medical providers and has colluded with other insurers to

14  artificially underpay, decrease, limit, and minimize the reimbursement rates paid for services

15  rendered by non-contracted providers.

16        15.    Often, the rates paid to medical providers such as Medical Provider by payors such

17  as DEFENDANT for the exact same procedure, treatment, surgery, or service, were paid at

18  different rates during the same year.  At other times, medical providers were paid rates which

19  were below what they would have received had they been a preferred or in-network provider,

20  even though such volume-discounted rates would have been significantly lower than usual,

21  reasonable, or customary rates as defined by California law.

22        16.    Medical Provider is informed and believes and thereon alleges that

23  DEFENDANT's systems for paying out-of-network claims is flawed, that DEFENDANT

24  improperly manipulates the data in its systems to underpay out-of-network Medical Provider

25  claims and that DEFENDANT's systems and methods for calculating such rates violate

26  California law.

27        17.    Payors and insurers want their patients to be seen and so they commonly promise

28  to pay a percentage of the market rate for the procedure, also described as, an average payment

- 5 -

COMPLAINT

for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary, and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

18.     The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[2]

19.     Based upon these criteria, Medical Provider's charges are usual, reasonable, and customary.  Medical Provider charged DEFENDANT the same fees that it charges all other payors.  Medical Provider's fees are comparable to the prevailing provider rates for other surgeons in comparable geographic areas to the one in which the services were provided.

20.     DEFENDANT uses the term UCR in its insurance policies.

21.     When DEFENDANT uses the term UCR for the price of a medical service, DEFEDANT will utilize a medical bill database from Fair Health Inc. to determine the exact dollar amount to be paid for a medical claim.[3]

22.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT and it is available for free in a more limited fashion for use by consumers.[4]

_____

[2] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (February 19, 2020), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[3] United Healthcare, Information on Payment of Out-of-Network Benefits (March 6, 2018), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

[4] *See* fairhealthconsumer.org, (February 19, 2020), https://www.

(Continued)

- 6 -
COMPLAINT

23.     When a medical provider like PLAINTIFF is told that DEFENDANT will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

24.     PLAINTIFF has a reputation for providing high quality care and, as a result, PLAINTIFF expects it will be appropriately compensated for those services.

25.     Pursuant to California Health and Safety Code Section 1371.31 and Cal. Code Regs. tit. 28, § 1300.71(3)(c), all medical providers have their own individual right to payment from insurers for medical services provided to one of their insureds in accordance with a patient's evidence of coverage.

26.     According to California Health and Safety Code Section 1371.31and Cal. Code Regs. tit. 28, § 1300.71, a failure to pay a medical provider in accordance with a patient's evidence of coverage, vests a medical provider with its own separate individual right to recovery in accordance with a patient's evidence of coverage.

## **SPECIFIC FACTS**

### **PATIENT SG**

27.     On February 27, 2020, Medical Provider conducted surgery and provided services on and for patient for the benefit of Patient and DEFENDANT.

28.     On February 26, 2020, Medical Provider's representative Y.P. spoke with Defendant's representative Shelly.

29.     Defendant represented to Medical Provider that Patient's deductible is and was $5,000.00 and that the deductible had been met and Patient's Max Out of Pocket ("MOOP") expense is and was $7,000.00 and that to date for the calendar year Patient had paid $257.73.

---

fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

30.     Defendant represented to Medical Provider that Medical Provider would be paid for medical services at one hundred (100) percent of the UCR amount.[5]

31.     DEFENDANT further represented that payment would not be made at a rate based on Medicare.

32.     All of the information obtained in said conversation was documented by Medical Provider at the time of the phone conversation as part of Medical Provider's policy and practice.

33.     At no time prior to the provision of services to Patient by Medical Provider, during conversations between Medical Provider and DEFENDANT did DEFENDANT advise Medical Provider that Patient's policy or certificate of insurance was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

34.     DEFENDANT did not make reference to any other portion of Patient's plan that would put Medical Provider on notice of any reduction in the originally stated payment percentage.

35.     Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

36.     Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

37.     Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

---

[5] A reasonable and customary payment amount can be determined through publicly available databases such as Fair Health. For all bills alleged in this complaint, the billed amount was less than what Fair Health would consider to be reasonable and customary.

- 8 -
COMPLAINT

38.     In the alternative, pursuant to California Health and Safety Code Section 1371.31 and Cal. Code Regs. tit. 28, § 1300.71(3)(c) DEFENDANT had a contractual obligation to pay Medical Provider in accordance with Patient's plan document and agreement.

39.     According to the Patient plan agreement, DEFENDANT was obligated to pay Medical Provider, Medical Provider's full billed amount.

40.     Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a total bill for $200,009.00.

41.     DEFENDANT paid $21,573.14 to Medical Provider. The amount paid was well below the billed amount and well below a UCR amount.

42.     As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider was and now HAMOC is entitled to that payment from DEFENDANT.

## **FIRST CAUSE OF ACTION:**

## **FOR PROMISSORY ESTOPPEL**

43.     HAMOC incorporates by reference all previous paragraphs as though fully set forth herein.

44.     DEFENDANT promised and asserted that the procedure to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of UCR.

45.     DEFENDANT also promised that the payment would not based on Medicare.

46.     Medical Provider only decided to provide services because they were assured that Medicare was not part of the calculation of payment and that Medical Provider would be paid at the UCR rate.

47.     At all times both DEFENDANT and Medical Provider understood that a promised payment rate of UCR meant that DEFENDANT would be calculating the payment rate using a medical claims database created by Fair Health Inc.

- 9 -

COMPLAINT

48.     After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide the procedure on the Patients expecting that payment would be made at that rate.

49.     As a direct and proximate result of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate less any applicable MOOP or deductible/coinsurance.

50.     The detriment suffered by Medical Provider and now HAMOC is the amount required to make Medical Provider and now HAMOC whole, for the time, cost and money expended in providing the services to patients based on DEFENDANT'S promise of payment at the UCR rate.  As a further direct, legal, and proximate result of Medical Provider's detrimental reliance on the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said services for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the services.

51.     In light of the material representations and misrepresentations of DEFENDANT made to Medical Provider, and of Medical Provider's reliance on DEFENDANT's representations, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patients' treatments at the UCR rate and Medical Provider was and now HAMOC is entitled to the value enumerated by that calculation. An amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF CAL. BUS. & PROF. CODE §17200 ET SEQ.

52.     HAMOC incorporates by reference all previous paragraphs as though fully set forth herein.

53.     DEFENDANT'S conduct violates California Business and Professions Code § 17200, *et seq*. The acts and practices of DEFENDANT constitute a common continuous and

- 10 -

COMPLAINT

1 | continuing course of conduct of unfair competition by means of unlawful and unfair business acts
2 | or practices within the meaning of Section 17200.

3 |      54.     Pursuant to California Health and Safety Code Section 1371.31 and CAL. CODE
4 | REGS. TIT. 28, § 1300.71, once Medical Provider provided medical services to Patient,
5 | DEFENDANT was obligated to pay Medical Provider in accordance with Patient's evidence of
6 | coverage.

7 |      55.     DEFENDANT's actions in this regard are unlawful, as DEFENDANT is obligated
8 | under the statutory scheme of the Knox Keene Health Care Service Plan Act of 1975, California
9 | Health & Safety Code, § 1340 et seq., ("Knox Keene Act") to process and pay for the out of
10 | network elective medical procedures at "the amount paid by the health care service plan…set
11 | forth in the enrollee's evidence of coverage."

12 |      56.     DEFENDANT's conduct is not only unlawful it is also unfair. DEFENDANT's
13 | conduct as alleged is "unfair" in that it offends public policy, is immoral, unscrupulous, unethical,
14 | deceitful, and offensive, and causes substantial injury to Medical Provider and now Plaintiff.

15 |      57.     Patients out of network health insurance so that they can be able to see a larger
16 | selection and generally a better selection of doctors. DEFENDANT's failure to compensate
17 | Medical Provider and medical providers like Medical Provider puts the burden of paying for the
18 | services on only on the Patient.

19 |      58.     DEFENDANTS actions as a result are unfair and wrong.

20 |      59.     DEFENDANT ignores the law and acts with disregard for each patient's choice to
21 | see an out of network doctor.

22 |      60.     For the reasons stated above, Plaintiff now seeks an order enjoining
23 | DEFENDANT from failing to pay out of network medical providers at least in accordance with
24 | each patient's evidence of coverage or health plan.

25 |      61.     Patients have a right to see the doctor they will see and Defendant's actions are
26 | merely an attempt to prevent patients freedom in that regard. As a result, Medical Provider seeks
27 | an order awarding attorneys' fees and costs pursuant to Code of Civil Procedure Section 1021.5,
28 | as it seeks to enforce this important aspect of the California healthcare scheme and system.

- 11 -

COMPLAINT

62.     Another remedy under the UCL is restitution. As expressed by *Bell v. Blue Cross of California,* "he who has performed the duty of another by supplying a third person with necessaries, although acting with the other's knowledge or consent, is entitled to restitution…" As a result, Medical Provider also seeks restitution for the services Medical Provider provided but for which Medical Provider was incorrectly paid.

**THIRD CAUSE OF ACTION**

**FOR NEGLIGENT MISREPRESENTATION**

63.     HAMOC incorporates by reference all previous paragraphs as though fully set forth herein.

64.     DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

65.     DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

66.     DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

67.     Medical Provider then relied on DEFENDANT's misrepresentation and provided the services to patients.

68.     Medical Provider and now HAMOC has been damaged in not receiving payment at the represented UCR rate.

**FOURTH CAUSE OF ACTION**

**FOR BREACH OF WRITTEN CONTRACT**

69.     HAMOC incorporates by reference all previous paragraphs as though fully set forth herein.

70.     Pursuant to California Health and Safety Code Section 1371.31 and CAL. CODE REGS. TIT. 28, § 1300.71, once Medical Provider provided medical services to Patient, DEFENDANT was obligated to pay Medical Provider in accordance with Patient's health plan documents and evidence of coverage.

- 12 -

COMPLAINT

71.     Medical Provider provided the services, but DEFENDANT failed to pay according to the terms of the patient's health plan documents.

72.     At best, DEFENDANT applied policies and terms not found in the over 200 pages of each patient's evidence of coverage, but instead claimed to exist in other policies, documents and manuals utilized by DEFENDANT, but never provided to patient or medical providers.

73.     Additionally, and separately, Patient assigned the rights and benefits under its health plan to Medical Provider and now HAMOC.

74.     At all times the Patients' health plan agreement was in full force and effect.

75.     Under the terms of the agreement, DEFENDANT was obligated to pay for facility services based on Medical Provider's billed charges.

76.     DEFENDANT failed to make payment in accordance with the terms of the written agreement and instead made a payment that was far less than Medical Provider's billed amount.

77.     As an actual, legal, and proximate result of the aforementioned conduct of defendants, and each of them, Medical Provider has suffered and HAMOC now suffers, and will continue to suffer in the future, damages based on DEFENDANT's failure to pay Medical Provider under the terms of the Patient's health plan agreement. A total amount to be determined at trial.

///
///
///
///
///
///
///
///
///
///
///

- 13 -

COMPLAINT

**PRAYER FOR RELIEF**

**WHEREFORE,** Healthcare Ally Management of California, LLC prays for judgment against defendants as follows:

1.      For compensatory damages in an amount to be determined, plus statutory interest.

2.      For restitution in an amount to be determined, plus statutory interest.

3.      For a declaration that DEFENDANT is obligated to pay plaintiff all monies owed for services rendered to the Patients; and

4.      For such other relief as the Court deems just and appropriate.

Dated: November 23, 2022          LAW OFFICE OF JONATHAN A. STIEGLITZ

                                  By: /s/ Jonathan A. Stieglitz
                                      JONATHAN A. STIEGLITZ
                                      Attorney for Plaintiff,
                                      HEALTHCARE ALLY MANAGEMENT OF
                                      CALIFORNIA, LLC

**DEMAND FOR JURY TRIAL**

Plaintiff, Healthcare Ally Management of California, LLC, hereby demands a jury trial as provided by law.

Dated: November 23, 2022          LAW OFFICE OF JONATHAN A. STIEGLITZ

                                  By: /s/ Jonathan A. Stieglitz
                                      JONATHAN A. STIEGLITZ
                                      Attorneys for Plaintiff,
                                      HEALTHCARE ALLY MANAGEMENT OF
                                      CALIFORNIA, LLC

EXHIBIT H
PAGE 59